[Crim. No. 1597. Second Appellate District, Division Two.—February 28, 1928.]

In the Matter of the Application of ROY NACHNABER for a Writ of Habeas Corpus.

W. T. Kendrick, Jr., for Petitioner.

Asa Keyes, District Attorney, and Tracy Chatfield Becker, Deputy District Attorney, for Respondent.

THOMPSON, J.—This is a petition for the writ of *habeas corpus* on behalf of Elsie Richmond and Anna Nachnaber, who on June 30, 1927, plead guilty to an information charging them with having committed a burglary on May 13, 1927. After the plea was entered and prior to July 14, 1927, they filed a written application for probation which was continued from time to time until September 14, 1927, on which day the court ordered "that the proceedings be suspended and that the defendants be granted probation for

a period of five years under the supervision of the probation officer and subject to the terms and conditions stated by the court, the first six months of said period, defendants shall be confined in the County Jail of the County of Los Angeles.''

Petitioner asserts that the portion of the order directing the confinement of the defendants in the county jail is void under the authority of *People* v. *Mendosa,* 178 Cal. 509 [173 Pac. 998], and *In re Fink,* 79 Cal. App. 659 [250 Pac. 715], for the reason that, under section 1203 of the Penal Code as it existed prior to the amendment of 1927 (Stats. 1927, p. 1493), the court had no authority upon granting probation to order the confinement of the defendants in the county jail or elsewhere.

By the amendment of 1927 trial judges were vested with broad discretionary powers, and had the offense been committed subsequent to the going into effect of the amendment, no question could be raised concerning the validity of the order. Inasmuch as the offense was committed, the plea was entered and application for probation was filed prior to the time the section as amended took effect, petitioner asserts that the court had no authority to order the confinement of the defendants upon granting probation for the reason that the amendment violates the constitutional guaranty against *ex post facto* laws, in its application to offenses committed prior to the time it took effect, to wit, July 29, 1927. His contention is that the punishment for the offense is increased or aggravated by the provisions of section 1203 of the Penal Code, as follows: ''(1) The court, judge or justice thereof, [in the order granting probation,] may suspend the imposing, or the execution of [the] sentence and may direct that such suspension may continue for such period of time not exceeding the maximum possible term of such sentence, except as hereinafter set forth, and upon such terms and conditions as it shall determine. [The court, judge or justice, in the order granting probation and as a condition thereof may imprison the defendant in the county jail for a period not exceeding the maximum time fixed by law in the instant case; may fine the defendant in such sum not to exceed the maximum fine provided by law in such case; or may in connection with granting probation, impose either imprisonment in county jail, or fine, or both, or

neither; may provide for reparation in proper cases; and may require bonds for the faithful observance and performance of any or all of the conditions of probation. In counties or cities and counties where road camps, farms, or other public work is available the court may place the probationer in such camp, farms, or other public work instead of in jail, and subdivision twenty-nine of section 4041 of the Political Code shall apply to probation and the court shall have the same power to require adult probationers to work, as prisoners confined in the county jail are required to work, at public work as therein provided; and supervisors of the several counties are hereby authorized to provide public work and to fix the scale of compensation for such adult probationers in their respective counties. In all cases of probation the court is authorized to require as a condition of probation that the probationer go to work and earn money for the support of his dependents or to pay any fine imposed or reparation condition, to keep an account of his earnings, to report the same to the probation officer and to apply such earnings as directed by the court.]

. "[The court may impose and require any or all of the above mentioned terms of imprisonment, fine and conditions and other reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law; for any injury done to any person resulting from such breach and generally and specifically for the reformation and rehabilitation of the probationer; provided, that if the probationer should violate the terms and conditions of his probation and the court should deem it just or necessary to revoke such probation, then and in that event any period of time which such probationer may have served in jail or other detention place or any fine paid, under the terms and conditions of his probation, shall be taken into consideration as a part of his punishment, and he shall have a credit therefor to be deducted from his term of confinement or from the amount of any fine imposed upon final judgment. Upon the defendant being released from the county jail under the terms of probation or sooner by order of court, and in all cases where he is not confined in the county jail at the time of granting probation, the court shall place the defendant in and under the charge of the probation officer of the

court, during such suspension or period of probation; provided, however, that upon the payment of any fine imposed and the fulfillment of all conditions of probation, probation shall cease at the end of the term of probation, or sooner, in the discretion of the court. In counties and cities and counties in which there are facilities for taking finger prints, such marks of identification of each probationer must be taken and a record thereof kept and preserved.]'' (Amendatory words are in brackets.)

In our opinion, it is unnecessary for us to extensively review here the long list of authorities relied upon by petitioner for the reason that our analysis thereof confirms the view we entertained, when with respect to a somewhat similar contention we recently said: ''The real question to be framed is whether the person accused has been deprived of a substantial right by reason of the change.'' (*People* v. *Edenburg*, 88 Cal. App. 558 [263 Pac. 857].) In all of the cases cited by petitioner's counsel, which appear on first examination to be in point, the defendant was deprived of some right to which he was entitled by law. For example, *State* v. *McCoy*, 87 Neb. 385 [28 L. R. A. (N. S.) 583, 127 N. W. 137], relates to an increase in the amount of a bond which a husband or father deserting his wife or minor children was required to post in order to authorize the court to suspend the sentence. A careful reading of that authority discloses, however, that such a defendant was, under the peculiar wording of that statute, entitled to be released from imprisonment upon filing the bond. The court there says that the section providing for the bond and suspension of sentence ''was in the form of a proviso and limited the first section which defined the offense and fixed the penalties,'' and again, ''The statutory right to have the sentence suspended upon giving bond in the sum of $200.00, in the event of conviction, was a substantial one, affording a means of escaping imprisonment. The amendment permitted the court to require a bond of $1,000 as a condition of suspending sentence. It is argued, however, that it was within the power of the court to release defendant on a $200 bond under either statute, and that therefore he was not deprived of a substantial right. This argument does not meet the question. When the case was called for trial, it was within the power of the court to require a $1,000 bond, if the amendment was

effective as to prior offenses. Under the new act the exercise of this power depended on the will of the court and not on the wish or financial ability of defendant. If he were unable to give bond in excess of $200, when required by order of the court to execute a bond in a larger sum as a condition of having sentence suspended, the change in the statute would derive him of his liberty in case of conviction. There may be a difference between a statutory right and the mercy of a court." The other authorities are likewise distinguishable. In this case the defendants at no time had a statutory right to be granted probation. Assuming that they had a right to ask leave to file an application therefor, they likewise had a right when the time for the consideration of the application had been continued until after July 27th, when the amendment took effect, to withdraw their application and suffer the punishment prescribed by law for the offense of which they were guilty. Whether they were granted probation rested solely in the conscience of the judge. It has been determined in *People* v. *Dunlap*, 27 Cal. App. 460 [150 Pac. 389], and in *People* v. *Laborwits*, 74 Cal. App. 401 [240 Pac. 802], "that the action of the trial court in refusing to hear such an application" is "not reviewable on appeal." See, also, *People* v. *Kirwin*, 87 Cal. App. 783 [262 Pac. 803.] Assuming, however, for the sake of argument, that conditions might exist which would justify us in reviewing such an order, still we think the petition is without merit. ▪ The petitioner contends that the court having determined that the defendants were entitled to probation, the probation indicated was of the nature and involved the terms under the law as it read when the application was filed. It is impossible to divide the proceeding up in a clear-cut way into separate steps, as is attempted to be done in petitioner's argument, and to say that it was first judicially decided that they were entitled to probation, and afterward as a separate matter that the court concluded what terms should be imposed. The two considerations are inextricably interwoven. The weakness of petitioner's position lies in the fact that in determining that probation should be granted the court necessarily thought out the terms to be imposed—*non constat,* if it had not been possible, as a condition of probation, to apply the corrective of a period of time in confinement the court might and presumably would

not have felt justified in granting the petition. The court, in its mercy and with the manifest object of endeavoring to reform the individuals, saw fit to inflict a punishment considerably less than that imposed by law for the offense of which they were guilty. It is perfectly apparent that the defendants have been deprived of no substantial right and therefore the amendment cannot be said to violate the inhibition against *ex post facto* laws.

Writ discharged and Elsie Richmond and Anna Nachnaber remanded.

Works, P. J., and Craig, J., concurred.