THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ANGEL LUIS OQUENDO SANTANA, Defendant and Appellant.

No. 16801. Decided July 21, 1961.

228

*Rafael A. Pesquera* for appellant. *Arturo Estrella, Acting Attorney General,* and *Héctor R. Orlandi Gómez, Assistant Attorney General,* for appellee.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, and Mr. Justice Rigau and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The defendant-appellant Angel Luis Oquendo Santana, who was found guilty of the crime of rape (§ 255 of the Penal Code, 33 L.P.R.A. § 961),[1] assigns the commission of two errors, to wit; lack of corroboration of the prosecutrix's testimony and insufficiency of the evidence. In order to consider this assignment, it is necessary to sum up the evidence offered by the district attorney and admitted at the trial, which was the only evidence presented in the prosecution.

The prosecutrix testified that she was 16 years old; that she was on her way to her grandmother's house to get some matches, and that she was running because she was afraid her father would beat her; that she fell down and that a brother of the defendant grabbed her and covered her mouth, but did not hit her; that the defendant wronged her; that she yelled when he grabbed her; that in order to commit the act, he tore the panties she was wearing; that while the defendant was committing the sexual act she "kicked" and yelled, and that they let her go when a neighbor arrived; that after the commission of the act she went to the house of Alejo del Valle where she was working; that next day she told what had happened to her mother "who had learned about it from my brother who had told her," at the latter's behest; that she did not tell her before because she was afraid her father would beat her; and that the defendant did not carry any weapon.

The parties stipulated that the physician who examined the prosecutrix shortly after the occurrence would testify

---

[1] The information reads as follows:

"On or about November 13, 1957, in Barrio Candelaria of Toa Baja, Puerto Rico ... there and then the said defendant Angel Luis Oquendo Santana, illegally and voluntarily, by the use of force and violence, against the will and without the consent of the young girl . . . laid and indulged in sexual intercourse with . . . , who was not there and then the defendant's wife."

that she was deflowered, but that the defloration was not recent. However, on November 14, 1957, she presented a periurethral trauma which was indicative of an "act of recent rape."

The prosecutrix's brother testified that on a certain occasion while he was among a group of persons, the defendant, who was one of them, had said that a young girl who was working in Alejo del Valle's house was "loose," and that he had gone with her to a certain place "to make love to her, to have sexual intercourse with her"; that he informed his mother and that that night they went to fetch her where she was working, but that his sister would not say anything despite the mother's insistence in questioning her.

The prosecutrix's mother testified that her son informed her that the defendant had boasted about his affair with the victim; that in view of this, she had asked her several questions, and that it was not until the following day that, at the witness' insistence, the victim confessed what had happened to her with the defendant; that the panties which she was wearing on the day of the alleged crime were very dirty because she was trampled upon on the ground and her panties were torn."

The policeman who investigated the occurrence testified that the defendant had admitted of his own will that he had had intercourse with the prosecutrix.

1.—The use of force or violence to subdue the victim's resistance is a sign of her nonconsent. Of course, there is no inflexible rule for determining the extent of the victim's resistance and it all depends on the particular circumstances of each case. It is not necessary, however, that the victim offer violent resistance, *People* v. *Newlan*, 343 P.2d 618 (Cal. 1959); *People* v. *Stewart*, 240 P.2d 704, 709 (Cal. 1952); and proof of resistance is necessary to show that there was nonconsent, and that such resistance was subdued by an equal measure of force or violence which

permitted the defendant to gratify his lustful concupiscence against the will of the victim. In order to determine the extent of resistance necessary for the crime to be committed, several factors must be considered, among them, the relative strength of the parties, their age, and the condition of the prosecutrix, as well as the uselessness of resistance under the specific circumstances of each case, *People* v. *Nazworth*, 313 P.2d 113 (Cal. 1957). The mere refusal of the prosecutrix is clearly insufficient, *People* v. *Baerga*, 70 P.R.R. 85 (1949). There is not the least doubt that the facts, as related by the prosecutrix, point to her nonconsent for the commission of the carnal act and the accomplishment by the defendant of his desires by the employment of a degree of violence sufficient to conclude that the victim did not consent of her own will. The evidence shows that she yielded when she was grabbed by the defendant's brother; that she yelled and that they covered her mouth; and that she "kicked" and yelled while penetration was taking place. The first error was not committed.

2.—In common law, a conviction of rape could be had on the uncorroborated testimony of the prosecutrix, if such testimony was not contradictory, incredible, or inherently improbable. However, in some jurisdictions, as in Puerto Rico (§ 250 of the Code of Criminal Procedure, 34 L.P.R.A. § 729), corroboration is required by statute. This requirement is intended to protect the accused against groundless accusations which may issue from a woman's reaction to the man's disaffection or fickleness. *Corroboration and Circumstantial Evidence in Rape Cases*, 30 J. Crim. L. 788 (1940); *Necessity and sufficiency of corroboration of prosecutrix in prosecution for rape*, 60 A.L.R. 1124 (1929).

In *People* v. *Colón*, 81 P.R.R. 788 (1960), we discussed at length the rule of corroboration in rape cases, and specifically said that under the modality charged therein against the accused the evidence must refer not only to the commission

of the carnal act, but also to the use of force or violence in order to consummate it.

The testimony of the physician who examined the injured party to the effect that she presented traces of recent peri-urethral trauma, which was indicative of an "act of recent rape," does not constitute sufficient corroboration because it does not connect the defendant with the commission of the crime. *People* v. *Lugo*, 70 P.R.R. 134 (1949) ; *People* v. *Baerga*, 70 P.R.R. 85 (1949) ; *People* v. *Feliciano*, 53 P.R.R. 402 (1938). Nor are the statements made by the brother and the policeman sufficient, since they merely corroborate the commission of the carnal act. *People* v. *Colón*, 81 P.R.R. 788 (1960). It is necessary, therefore, to analyze the testimony of the prosecutrix's mother which we have summed up in order to determine whether sufficient proof of corroboration was offered, that is, whether the statements made to her by her daughter, which are part of the *res gestae*, establish the other element of the crime, *i. e.*, the use of force or violence to subdue resistance.

In *People* v. *Lugo*, 70 P.R.R. 134 (1949), the defendant had sexual intercourse with the victim in his car and afterwards took her to her sister's house. The latter testified that the injured party had arrived at her house alone and crying, and that when she opened the door she put her arms around the witness and moaned; that she tried to find out what was the matter with her and she only said that she was scared, and when she asked her why she had come at such late hours she answered that the defendant had forced her into the car; and that when she questioned her whether Lugo had done anything to her, she cried and said she was scared. The mother testified that she questioned her daughter in connection with her conduct and that the latter told her that the defendant had forced her into the car to take a short ride, but neither that night nor the following night she said anything about what had happened, and on the third day she

told her mother without details that she had been raped. The offended girl's father testified that he went to fetch his daughter and found her crying in his other daughter's house; that he asked her what was the matter and she said she was scared. That night she did not tell him anything. On Sunday he was not at home and on Monday his wife told him what had happened. When he asked his daughter, she told him that she had not said anything before because she was afraid of the defendant. It was held that the statements which the prosecutrix made to the mother and to other relatives were not sufficient corroboration, because those statements were not spontaneous nor were they made at the first opportunity to make them without duress.

*People* v. *Márquez*, 64 P.R.R. 354 (1945), presented a situation of facts very similar to that in the present case. The corroboration consisted of the testimony of the prosecutrix's mother who testified that on the day of the occurrence, in noticing that her daughter walked with difficulty and that her dress was stained with blood, she questioned her and that she answered that she was tired and that the stains were caused by the menstruation; that eight days later the victim's father told her that he had heard the defendants say that they had abused her, and that when he inquired from his daughter she told him what had happened. We said: "...the latter statement of the prosecutrix is not the spontaneous statement contemplated by said rule. It is true that according to her testimony the defendants had threatened to kill her, but it does not appear from the evidence that after the offense she remained under their influence. There is no showing in the record that she saw them at any subsequent time, but, on the contrary, she remained with her parents from whom she had nothing to fear."

In the instant case the prosecutrix's statements on what happened to her were made at the insistence of the mother, who was already informed of what the defendant had said

among a group of persons. When the mother heard about it, she went to fetch her daughter at the place where she was working, but she did not say anything despite her questioning. Next day, at her mother's insistence, the daughter told her what had happened. At no time was the silence of the offended girl due to threat or duress of the defendant. The only explanation for the victim's attitude that nothing had happened to her, when she was questioned the first time, was that she was afraid her father would beat her. But it clearly appears that the first time the mother asked her to tell her what had happened, the father was not there . Under the circumstances of this case and in the light of the holding in the cases of Lugo and Márquez, we can not hold that this evidence is sufficient corroboration because the element of spontaneity is absent, since the statements which she made to the mother were made at the latter's behest, nor that of contemporaneity, because they were not made at the first opportunity which the prosecutrix had to make them.

However, the difficulty here lies in that the evidence was not timely objected to by the defendant, and, hence, there is no question as to its admissibility. It was not until after the evidence of The People was heard that it was mentioned for the first time for the purpose of moving for acquittal on the ground that the evidence offered to corroborate the prosecutrix's testimony was hearsay evidence, because it was not part of the *res gestae*. They did not even move to strike it out at the close of the witness' testimony. Objection to admissibility can not be raised indirectly for the first time on appeal. *People* v. *Torres*, 81 P.R.R. 659, 664 (1960) ; *People* v. *Jiménez*, 78 P.R.R. 7, 11 (1955). However, considering that this case was tried by the court without a jury and that the admission of the prosecutrix's testimony was so obviously prejudicial to the defendant because it was the only evidence of corroboration of the element of violence charged, the judge should have excluded

it despite the absence of a timely objection. *Cf. People* v. *Fournier*, 77 P.R.R. 208, 263 (1954). At least, under the specific circumstances of this case, the petition by the defense for peremptory acquittal of the defendant should have been considered in the light of a re-examination of the question of admissibility.[2]

The judgment entered by the Superior Court, Bayamón Part, on February 20, 1959, will be reversed and the defendant acquitted.

---

[2] In view of the insistence of the defendant's attorney on the insufficiency of the evidence of corroboration, the court ordered "that the young girl return to the witness stand." (Tr. Ev. 29.)   But, clearly, this was not proper because the prosecutrix could not corroborate herself.

